# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CARYL-MARIE BARRON,

    Plaintiff,

v.                                                                      Case No: 8:13-cv-31-T-30EAJ

THE SCHOOL BOARD OF
HILLSBOROUGH COUNTY,

    Defendant.

## ORDER

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment (Dkt. #24) and Plaintiff's Response in Opposition to the Motion (Dkt. #34). Upon review and consideration, it is the Court's conclusion that the Motion should be granted in part and denied in part.

### *Background*

Plaintiff, Caryl-Marie Barron filed a complaint against the Defendant The School Board of Hillsborough County, Florida (the "School Board") alleging disability discrimination in violation of the Florida Civil Rights Act ("FCRA") and retaliation and interference in violation of the Family and Medical Leave Act ("FMLA"). Plaintiff worked as an Academic Intervention Specialist ("AIS") at Mort Elementary School ("Mort") since August 1, 2007. She worked under the supervision of the principal Dr. Beny Peretz. Barron was subject to a three year probationary period of employment at the time of her hiring. At

the end of that period, Dr. Peretz could either nominate Barron for tenure or extend the probationary period for one year. Dr. Peretz chose to extend the probationary period based on several concerns raised in Barron's performance evaluations. After the extension, Barron's performance evaluations continued to document areas that needed improvement or were unsatisfactory, and Dr. Peretz did not nominate her for tenure. As a result, on May 11, 2011, the Superintendent for the School Board informed Barron that her employment would terminate on June 14, 2011, the end of the school year.

Barron was the only AIS at Mort. Her essential duties included providing intensive reading instruction to at risk kindergarten, first grade, and second grade students who were retained in their grade or were otherwise unsuccessful in obtaining reading skills commensurate with their grade level. The position is designed to prevent continued academic failure. Barron was assigned approximately twelve classrooms from which to pull students in groups of three or five for forty minutes of scheduled instructional time during the day. If Barron was absent from work, the students did not receive the specialized instruction for that day.

Barron's schedule provided that she begin instruction with the students at 8:15 a.m., although she was to arrive at the school at 7:30 a.m. along with the other teachers. Her day ended at 3:30 p.m. Part of her duties included monitoring pedestrian traffic and students in the mornings and afternoons outside of the school building. She scheduled several group sessions throughout the day in between her morning and afternoon duties.

Barron suffers from chronic pain and muscle stiffness as a result of a car accident. She takes several medications to manage the pain including methadone, oxycodone and

morphine as prescribed by her medical provider. She occasionally used a cane and sometimes required assistance from fellow co-workers to get around the school, or from the parking lot to the school entrance. The pain varied from day to day. Barron's routine was to wake up early in the morning and begin taking her medication at various intervals to allow the medication to take effect. Depending on the severity of the pain, she had to wait until her stiffness and pain subsided enough for her to drive to work. Once she arrived, she would sometimes take additional time to allow her to adjust to the pain in her car prior to entering the school. This routine led to her being late on several occasions.

Barron exhibited a pattern of lateness beginning in the 2008-2009 school year. In the 2009-2010 school year, Barron had a total of 71 absences, twelve weeks of which were approved FMLA leave and 12.8 hours of lateness. In the 2010-2011 year she had a total of thirteen absences as of March 24, 2011, three of which were FMLA approved and was late a total of 42.8 hours. At one point, Dr. Peretz spoke to her about her attendance and she stated that she had trouble getting around in the morning, but did not request an accommodation or FMLA at that initial meeting.

In her Spring semester 2009 evaluation, she received a "needs improvement" rating for punctuality, as well as adhering to policies and procedures, carrying out assignments, and performing with a minimum amount of supervision. The Plaintiff had not requested accommodation or FMLA leave prior to the Spring 2009 evaluation. Further, other classroom teachers started to complain that she did not pick up students on time or at all without explanation or notification. Dr. Peretz provided Barron with additional

supervisory and training support for the AIS program. Barron was late for meetings and trainings, and did not perform well during classroom observations.

In January 2010, Plaintiff requested FMLA leave for twelve consecutive weeks to deal with her physical pain, which the School Board granted. She was on leave from January to April 2010. On January 31, 2011, Barron formally requested an accommodation for her pain issues. She specifically requested that her start time change from 7:30 to 8:00 a.m. Dr. Peretz declined her request on the basis that when he adjusted her start time to 8:00 a.m. last year she would still arrive late, at times arriving between 8:15 or 8:30 a.m. He then revoked the adjustment so that her schedule reverted to an arrival time of 7:30. At the time that Dr. Peretz adjusted her start time, there is no evidence Barron made a specific accommodation request at that point or that she indicated she had a disability, only that she and Dr. Peretz decided to adjust her hours to address the lateness.  After denying her formal request, Dr. Peretz had a meeting with Barron to discuss other possibilities, but no other accommodation was requested or provided.

During the Spring semester of 2011, Barron requested intermittent FMLA leave which was granted. Barron took approved leave on nine days, the last of which was June 3, 2011.  However she also was absent from work on other days that were not approved. She admits that she failed to provide for a substitute on three of the days she was absent from work, which she attributes to an oversight on her part.

Dr. Peretz documented his concerns with Barron's performance through several performance evaluations and memoranda. In one memorandum Dr. Peretz specifically warned Barron that if her performance and attendance did not improve he would not be

4

able to recommend her for tenure. On March 18, 2010, he informed Barron of the specific performance issues and stated that he was recommending that her probation be continued for another year. On November 18, 2010, Dr. Peretz had a conference to discuss performance issues, which he later memorialized in a memorandum. In January 2011, Dr. Peretz issued another memorandum regarding Barron's performance issues which Barron signed on January 14, 2011. All of this documentation took place prior to Barron's first formal request for an accommodation. Dr. Peretz and other administrators issued additional written memoranda to Barron documenting specific issues with performance in March 2011, which included issues unrelated to her arrival time in the morning.

*Discussion*

## I. Legal Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Id.* at 248. The substantive law of the claimed causes of action will determine which facts are material. *Id.*

All evidence must be examined in the light most favorable to the non-movant and all inferences must be drawn in his or her favor. *Id.* at 255. Once a party properly makes

5

a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A dispute about a material fact is "genuine," when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. There can be "no genuine issue as to any material fact," when there is a complete failure of proof concerning an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 323. The failure of proof necessarily renders all other facts immaterial. *Id*. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Id*.

### I. Defendant's Motion for Summary Judgment

The School Board moves for summary judgment as to all of Barron's claims on the basis that: (1) Barron has not established that she has a disability; (2) she cannot show she was a qualified person able to perform the essential duties of the job with an accommodation; (3) she did not request a reasonable accommodation; and (4) she cannot establish that the School Board's legitimate non-discriminatory reasons for her termination are pretextual.

## II. Disability Discrimination under the FCRA

Barron alleges discrimination based on her disability under the FCRA. Disability discrimination claims raised under the FCRA are analyzed under the same framework as the ADA. *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263-64 (11th Cir. 2007). To establish a prima facie case of employment discrimination under the ADA, a plaintiff must demonstrate "that (1) he has a disability, (2) he is a qualified individual, which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him because of the disability." *D'Angelo v. ConAgra Foods, Inc*., 422 F.3d 1220, 1226 (11th Cir. 2005) (internal quotations omitted). Under the ADA, an employer's failure to provide a reasonable accommodation can be a form of discrimination. *See Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1262 (11th Cir. 2007).

Barron argues that she is a qualified person with a disability, that the School Board violated the FCRA by failing to provide a reasonable accommodation for issues associated with her chronic pain, unlawfully terminating her due to her disability and retaliating against her for seeking an accommodation in the form of a revised schedule. The School Board disputes that Barron is a person with a disability, and that even if she was, she was not qualified to perform the essential duties of her position because her habitual lateness prevented her from meeting with students on a timely basis.

Assuming *arguendo* that Barron can demonstrate that she is a person with a disability, she has not established that she is a qualified person. An individual is qualified

if "with or without reasonable accommodation, [he] can perform the essential functions of the employment position...." 42 U.S.C. § 12111(8). Therefore, if Barron cannot show that she can perform the essential functions of an AIS teacher with a reasonable accommodation, then she cannot sustain a claim for disability discrimination under the FCRA.

a. **Reasonable Accommodation**

It is Barron's burden to identify a reasonable accommodation that will allow her to perform the essential duties of her position. *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir. 1998). It is also Barron's burden to show that the accommodation is reasonable. *Id*. An employee's request for part-time or modified work schedules may be a reasonable accommodation. 42 U.S.C. § 12111(9)(B). However, an employer is not required to reallocate job duties to change the functions of a job. *Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000). Therefore, a request to arrive at work at any time, without reprimand, is not a reasonable accommodation because it would change the essential functions of a job that requires punctual attendance. *Id*.

The School Board argues that Barron had not made a specific request for accommodation prior to January 27, 2011, when she submitted a letter requesting that she start later in the morning. Prior to that she claims that the administrators knew of her condition and that she would need some accommodation based on it since they observed her walking with a cane and in pain. The Eleventh Circuit has held that "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an

accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc*., 167 F.3d 1361, 1363 (11th Cir. 1999) (per curiam).

The Eleventh Circuit has not determined the precise form the request for a reasonable accommodation must take. *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1261 n. 14 (11th Cir. 2007). However, it indicated that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to make appropriate inquiries about the possible need for an accommodation." *United States v. Hialeah Hous. Auth*., 418 Fed.Appx. 872, 876 (11th Cir. 2011) (per curiam) (internal quotation marks omitted)).

Barron has not provided sufficient evidence to show that she requested an accommodation prior to January 27, 2011, other than her own subjective belief that the administrators "should have known" that she impliedly requested an accommodation. Therefore, the Court will only consider Barron's request for an accommodation as of January 27, 2011, in determining whether her request was reasonable.

An accommodation is reasonable only if it allows the employee to perform the essential functions of her job. *Woodruff v. Sch. Bd. of Seminole County, Fla*., 304 Fed. Appx. 795, 800 (11th Cir. 2008). Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices ... and other similar accommodations." 42 U.S.C. § 12111(9)(B). Further an employer may have to restructure a particular job by altering or

eliminating some of its "marginal functions." *See id*. (quoting *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)). "[W]hat is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1527 (11th Cir. 1997).

In this case, Barron's essential functions were to meet with at risk students to provide intensive reading lessons. Her schedule provided that she begin teaching students at 8:15 a.m. Her written accommodation request was to arrive at work at 8:00 a.m. However, in her deposition she clarified her request and stated that she really was requesting to come in between 8:15 a.m. and 8:30. Dr. Peretz met with Barron to discuss the accommodation. He rejected it because when she was previously provided with the adjusted schedule, she continued to arrive late. Therefore, the change in schedule was not a reasonable accommodation because it did not allow her to perform the essential duties of her position by arriving on time to start her 8:15 a.m. class. *See Salmon v. Dade County Sch. Bd.*, 4 F. Supp. 2d 1157 (S.D. Fla. 1998) (holding that prompt arrival was an essential element of guidance counselor's position, as she was the only counselor in the school, and the school was not required to change a job element in order to satisfy her needs.) The school's prior willingness to provide her with a revised schedule does not make the second request reasonable. *See Wood v. Green*, 323 F. 3d 1309, 1314 (11th Cir. 2003) (stating that "prior accommodations do not make an accommodation reasonable.")

As to the two comparators offered by Barron, Melissa Eznor and Debra Bolden, the fact that the school allowed those two employees to adjust their schedules is not enough to

10

show that the requested accommodation was reasonable as to Barron. To be an adequate comparator, the individuals outside the plaintiffs protected class must be "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

The two employees both received modified work schedules upon request. Neither employee is disabled, but both requested to arrive at work fifteen minutes earlier than their scheduled arrival time to accommodate their need to take care of family members. However, neither employee is similarly situated in all relevant respects. Eznor is a guidance counselor and Bolden is a behavior resource specialist. Eznor and Bolden are not classroom teachers and do not have set schedules to meet with students. Their duties vary from day to day and they meet with students on an as needed basis. Further, Bolden's earlier start time allowed her to monitor students who arrived at school too early, which had become a recurring problem at the time of her request. Therefore, Eznor and Bolden are not valid comparators. *See also Jest v. Archbold Med. Ctr., Inc.,* 7:11-CV-161 HL, 2013 WL 503071 (M.D.Ga. 2013) (holding that since plaintiff was unable to present any evidence to show a valid comparator who was in a "nearly identical" situation and was treated differently, her claim for disability discrimination could not stand.)

The Court concludes that Barron's request for an accommodation in the form of arriving to work at a later time was not reasonable under the circumstances. Although her formal request stated 8:00 a.m. as her new arrival time, she admits that she really wanted to arrive somewhere between 8:15 - 8:30 which would prevent her from starting her essential duties promptly. Further, she failed to abide by that new start time when she was initially granted the revised schedule which demonstrates that the requested

11

accommodation did not allow her to perform her essential function of arriving on time to start her first scheduled class.

### b. Unlawful Termination

Even assuming Barron could show that she is a qualified person with a disability, she still has the burden to show that the School Board discriminated against her based on her disability. Where a plaintiff offers circumstantial evidence to prove a discrimination claim under the ADA, courts use the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Wascura v. City of South Miami,* 257 F.3d 1238, 1242 (11th Cir. 2001). Therefore, once the employer offers legitimate, nondiscriminatory reasons for the employment action to rebut the presumption, the burden shifts back to the plaintiff to discredit the proffered reasons by showing that they are pretextual. *Id.* at 1243.

The School Board asserts that Barron's termination is based on unsatisfactory performance including several unscheduled and unapproved absences and lateness, and failing to adhere to school guidelines and policies regarding lesson planning, documentation, and student interaction. Barron argues that because part of the reason for her termination is her attendance issues, which are directly linked to her disability, the School Board's termination is because of her disability and therefore unlawful. However, the performance issues are well documented by different school administrators, many of which are completely unrelated to her attendance. The School Board has met its burden to produce a legitimate non-discriminatory reason for her termination. Barron has not

produced sufficient evidence to show that the reasons are pretextual. Therefore, the Court will grant summary judgment to the School Board on this claim.

### c. Retaliation

Barron asserts that the School Board retaliated against her for engaging in the protected activity of requesting an accommodation under the FCRA. Courts assess FCRA retaliation claims under the same framework as retaliation claims arising under Title VII. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act.")

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the adverse action and the protected expression. *Luna v. Walgreen Co.*, 347 Fed. Appx. 469, 472 (11th Cir. 2009) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (2001)); *Louis v. Chrysalis Ctr., Inc.*, 121 So. 3d 633 (Fla. 4th DCA 2013). Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a non-retaliatory reason for its treatment of the employee. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer presents a legitimate explanation for its actions, the burden then returns to the plaintiff to show that the explanation is pretextual. *Id.*

Barron claims that the principal Dr. Peretz retaliated against her after she submitted her formal request for accommodation in January 2011 by re-assigning her so that she had afternoon duties that were farther away from the school building and caused her to walk a long distance. The new duties began in or around March 2011. She claims this change was

13

"designed to exacerbate Plaintiff's chronic pain." Prior to the change she was assigned to an area that was closer to her office and which allowed to her sit down as needed. Barron admits in her interrogatories that the changes were made school wide on February 1, 2011, but argues that her specific change is retaliatory in light of the fact that the school administrators knew she had problems walking.

To satisfy the adverse employment action prong in a retaliation case, an employee need only show that "a reasonable employee would have found the challenged action materially adverse" sufficient to discourage that employee from engaging in the protected activity. *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1259 (11th Cir. 2012). This is an objective standard and distinguishes "significant from trivial harms." *White*, 548 U.S. at 68. The Eleventh Circuit's interpretation of *Burlington* strongly suggests that "it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford v. Carroll*, 529 F.3d 961, 974 n.13 (11th Cir. 2008). The change in this case was not trivial since it involved Barron having to walk a further distance on a daily basis to complete her afternoon duties at a time when the school administrators were aware of her pain and walking issues. A reasonable jury could find that under these circumstances the change was materially adverse.

Dr. Peretz declined Barron's accommodation on January 31, 2011, and the change occurred on February 1 and took effect in early March. Therefore, Barron establishes a causal connection between the request and the adverse action through temporal proximity.

*See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n. 52 (11th Cir. 2008) (to establish a causal connection between protected activity and an adverse employment action, the plaintiff must show "that the protected activity and the adverse action are not completely unrelated."(citation omitted)); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (the plaintiff satisfies this burden "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." (citation omitted)).

Based on the record before it, the Court concludes that Barron has presented a prima facie case for retaliation under the FCRA based on her request for an accommodation. The School Board has not presented a legitimate non-retaliatory reason for the change in her afternoon duties. Therefore, the Court must deny the School Board's summary judgment as to this claim.

### III. Interference and Retaliation under the FMLA

The FMLA creates two types of claims to preserve and enforce the availability of the substantive rights granted by it: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1); and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. *See* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c). *See also Strickland v. Water Works & Sewer Bd. of City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001). While the FMLA does not clearly define these two claims with the labels "interference" and "retaliation," those are the labels courts have used in describing an employee's claims under

the Act. *Id*. at 1206 n. 9 (citing *O'Connor v. PCA Family Health Plan, Inc*., 200 F.3d 1349, 1352 (11th Cir. 2000)).

To state a claim of interference with a substantive right, an employee only has to demonstrate that she was entitled to the benefit denied by a preponderance of the evidence. *Id*. But, to succeed on an FMLA retaliation claim, an employee must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. *Strickland*, 239 F.3d at 1207. In the absence of direct evidence, the same burden shifting framework established in *McDonnell Douglass* applies to retaliation claims under the FMLA. *See id*. Therefore, once Barron establishes her prima facie case of retaliation, she must then overcome any legitimate non-retaliatory reason for the termination.

Barron has presented no evidence that she was denied FMLA leave upon request. She requested consecutive leave in January 2010 and received twelve weeks of leave from January through April 2010. She argues that terminating her contract while she was approved for leave constitutes interference. However, the timing of the decision to terminate Barron's employment was due to the ending of the school year, and not her request for leave. She returned to her position as an AIS teacher in June 2011 after her intermittent leave to complete the school year.   Also she was previously warned in writing on several occasions that if her performance did not improve in the several areas that needed improvement as discussed in her evaluations that the principal would not nominate her for tenure which would result in her termination. *See Strickland*, 239 F.3d at 1208 ("An employer can deny the right to reinstatement, however, if it can demonstrate that it would

16

have discharged the employee had he not been on FMLA leave.") Further, the FMLA does not protect an employee who has requested leave from terminations for poor performance. *Gamba v. City of Sunrise*, 157 Fed. Appx. 112, 113 (11th Cir. 2005) ("Where the employer produces significant evidence of the employee's poor performance, it is not enough that the request for leave and the termination are closely related in time.")

Even though tardiness and excessive absence contributed to Dr. Peretz's decision not to nominate Barron for a tenure position, many of Barron's absence and lateness occurred prior to her request for leave and were not protected under the FMLA. *See Jenkins v. Verizon Communications, Inc.*, 8:07-CV-1110-T-17-TBM, 2009 WL 960100 (M.D. Fla. 2009) (After granting plaintiff all FMLA leave time to which she was entitled, she still exceeded the maximum allowable absences and therefore her termination for those absences did not constitute interference with her FMLA rights.) Therefore, Barron has failed to prove her interference claim.

Assuming Barron is able to establish a *prima facie* case for retaliation under the FMLA, the claim fails since she has not established that the School Board's legitimate non-retaliatory reasons for her termination are pretextual. The performance issues, many of which were unrelated to her lateness and absence, began prior to her first request for FMLA leave, and continued in spite of ongoing feedback and additional support from staff members. Therefore, the School Board is entitled to summary judgment as to Barron's interference and retaliation claims under the FMLA.

*Conclusion*

Barron has not shown that her requested accommodation was reasonable under the circumstances, and she has not presented sufficient evidence to show that the School Board's legitimate non-discriminatory reasons for terminating her employment were pretextual. Therefore, the School Board is entitled to summary judgment as to Barron's FCRA claims for failure to accommodate and unlawful termination.

Barron also has not shown that the School Board interfered with her entitlement to FMLA leave, since she returned to work after taking intermittent leave to finish the Spring term of 2011 and she received adequate warning that she would not be nominated for tenure if her performance did not improve. She also fails to overcome the School Board's legitimate reasons for her termination in her retaliation claim. Therefore the School Board is entitled to summary judgment as to her FMLA claims.

However, the school's change to the location of Barron's afternoon duties are sufficient to constitute an adverse employment action to support a retaliation claim under the FCRA and she has presented enough evidence to show a causal connection. Since the School Board failed to meet its burden of producing a legitimate non-retaliatory reason for the change in her afternoon duties, summary judgment is denied as to this claim.

It is therefore ORDERED AND ADJUDGED that:

1. The Defendant's Motion for Summary Judgment (Dkt. #24) is GRANTED in part and DENIED in part.

2. Summary judgment is granted in favor of Defendant The School Board of Hillsborough County as to Caryl-Marie Barron's claims as to Count I for

>   retaliation under the Family and Medical Leave Act, Count II for interference with the Family and Medical Leave Act, and Count III for failure to accommodate and unlawful termination under the Florida Civil Rights Act.
>
> 3. Summary judgment is denied as to Caryl-Marie Barron's claims as to Count III for retaliation under the Florida Civil Rights Act.

**DONE** and **ORDERED** in Tampa, Florida, this 27th day of February, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2013\13-cv-31 msj 24.docx